ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 MAY -7 PM 4:01

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| T.J.S., by Next Friend, Jeanne Burch, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 312-047 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,[1] | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Jeanne Burch ("Plaintiff"), proceeding on behalf of her niece, T.J.S. ("Claimant"), appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Plaintiff protectively applied for SSI on behalf of Claimant on December 4, 2009, alleging a disability onset date of June 27, 2005, the date of Claimant's birth. Tr. ("R"), pp. 113-117. The Social Security Administration denied Plaintiff's applications initially, R.

---

[1]The Court takes judicial notice that on February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1), the Clerk is **DIRECTED** to substitute Carolyn W. Colvin as Defendant in this case.

60-63, and on reconsideration, R. 64-66. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a video hearing on July 8, 2011. R. 33-57. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by an attorney. Id. On August 22, 2011, the ALJ issued a partially favorable decision. R. 11-28.

Applying the three-step sequential process required by 20 C.F.R. § 416.924(a), the ALJ found:

1. The claimant has not engaged in substantial gainful activity since June 27, 2005, the date the claimant was born and became disabled (20 C.F.R. § 416.920(b) and 416.971 *et seq.*).

2. From June 27, 2005, through August 23, 2010, the period during which the claimant was under a disability, the claimant had the following severe impairment: attention deficit hyperactivity disorder (20 C.F.R. § 416.924(c)).

3. From June 27, 2005, through August 23, 2010, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in Listings 112.00 in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, and 416.926). However, from June 27, 2005, through August 23, 2010, the period during which the claimant was disabled, the severity of the claimant's impairment functionally equaled the Listings. (20 C.F.R. §§ 416.924(d) & 416.926(a)). Thus, the claimant was under a disability, as defined by the Social Security Act, from June 27, 2005, through August 23, 2010 (20 C.F.R. § 416.924(a)).

R. 20-22.[2]

The ALJ then determined that "medical improvement" occurred as of August 24, 2010. R. 22. Following the three-step process set forth in 20 C.F.R. § 416.994a for

---

[2] The ALJ also noted that Claimant was a "preschooler" at the time of Plaintiff's application for SSI benefits and that she was a "school-age child" on both August 24, 2010, the end of her disability, as well as August 22, 2011, the date of his decision. R. 20, 22; see 20 C.F.R. §§ 416.926a(g)(2).

2

determining whether a disability has ceased in a child, the ALJ found:

1. Medical improvement occurred as of August 24, 2010, the date the claimant's disability ended (20 C.F.R. § 416.994a(c)).

2. As the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in Listings 112.00 in 20 C.F.R. Part 404, Subpart P, Appendix 1, from June 27, 2005, through August 23, 2010, the claimant does not "still" have that impairment or combination of *impairments* that meets or medically equals the severity of one of those listed impairments (20 C.F.R. §§ 416.924, 416.925, and 416.926).

3. The claimant has not developed any new impairment or impairments since August 24, 2010, the date the claimant's disability ended. Thus, the claimant's current severe impairment is the same as that present from June 27, 2005, through August 23, 2010. Since August 24, 2010, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, and 416.926). Additionally, since August 24, 2010, the claimant has not had an impairment or combination of impairments that functionally equals the severity of the listings in Listing 112.00 (20 C.F.R. §§ 416.994a(b)(2), 419.926a, and SSR 05-03p). Thus, the claimant's disability ended August 24, 2010 (20 CFR § 416.994(b)(3)(iii)).

When the AC denied Plaintiff's request for review on April 11, 2012, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal of the partially adverse decision. Plaintiff argues in her brief that the ALJ erred in finding that medical improvement occurred as of August 24, 2010, because the exhibits to which the ALJ cites in support of that finding do not show medical improvement. (See doc. no. 16 (hereinafter "Pl.'s Br.").) The Commissioner maintains that substantial evidence supports the ALJ's finding that medical

3

improvement occurred and that Claimant's disability ceased as of August 24, 2010. (See doc. no. 17 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner's decision even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in

the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

As noted above, Plaintiff argues in her brief that the ALJ erred in finding that medical improvement occurred as to Claimant's attention deficit hyperactivity disorder ("ADHD") as of August 24, 2010.[3] (Pl.'s Br., pp. 11-16.) Specifically, Plaintiff asserts that no such improvement is indicated by the medical records in this case and that the three exhibits to which the ALJ cited in support of his finding do not support that finding. (Id. at 16.) Plaintiff also asserts that, "[w]hile a review of the medical records could arguably show improvement as of August 2010," the Individualized Education Program ("IEP") forms and teacher questionnaires from Claimant's school concerning Claimant following that date indicate otherwise. (Id. at 17.) Plaintiff asserts that those documents, when considered in

---

[3]In the interest of clarity, it will be helpful to note here that the Court's references to "Plaintiff" concern T.J.S.'s aunt, who filed the instant appeal, and that its references to "Claimant" concern T.J.S. herself.

5

conjunction with Claimant's "continued treatment with the same diagnosis" by Community Mental Health Center, show that, contrary to the ALJ's finding, Claimant continues to have a marked limitation in the areas of "attending and completing tasks" and "interacting and relating to others." (Id.) As a summary of her argument, Plaintiff asserts that the ALJ did not cite to any medical evidence supporting his finding of medical improvement and that, accordingly, his decision was not based on substantial evidence and should be reversed. (Id. at 18.) Plaintiff additionally argues that, even if substantial evidence *does* exist, Claimant has shown that her impairment "functionally equals the severity of the listing [it] equaled before." (Id.)

### A. Claimant's Impairment from June 27, 2005, through August 23, 2010

A three-step sequential evaluation is used to evaluate disability in children. 20 C.F.R. § 416.924. At the first step, the Commissioner must determine whether the child is engaging in substantial gainful activity; if so, the claim is denied. Id. § 416.924(b). At the second step, the Commissioner must determine whether the child has a severe impairment or combination of impairments; if the child does not have any severe impairments, the claim is denied. Id. § 416.924(c). At the third and final step, the Commissioner must determine whether the child's impairments meet, medically equal, or functionally equal the istings. Id. § 416.924(d); see Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1278-79 (11th Cir. 2004) (discussing the three-step sequential process for assessing whether a child is eligible for disability benefits). Functional equivalence can be found by assessing a child's overall functional limitations which result from her severe impairment or combination of impairments. 20 C.F.R. § 416.926a. In determining functional equivalence, the Commissioner must consider the impact of the child's impairment or impairments on six

domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do." Id. § 416.926a(b)(1). These domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for [one]self; and (6) health and physical well-being. Id. Functional equivalence requires a finding of "marked" limitations in two domains or an "extreme" limitation in one domain.[4] Id. § 416.926a(a).

Here, the ALJ found that, from June 27, 2005, through August 23, 2010, Claimant's impairment caused a marked limitation in acquiring and using information, an extreme limitation in attending and completing tasks, and an extreme limitation in interacting and relating to others. R. 21. Accordingly, the ALJ found that Claimant's impairment during that time period was functionally equivalent to the Listings, such that she was under a disability during that time period. R. 21-22. Plaintiff does not challenge that finding.

### B. Claimant's Impairment as of August 24, 2010

A three-step sequential evaluation is also used to evaluate whether a child's disability continues. 20 C.F.R. § 416.994a. At the first step, the ALJ must determine whether there has been medical improvement; if there has, then the analysis proceeds to the second step. Id. § 416.994a(b)(1). At the second step, the ALJ must determine whether the claimant's impairment "still meet[s] or equal[s] the severity of the listed impairment that it met or equaled before;" if it does not, then the analysis proceeds to the third step. Id.

---

[4] A marked limitation is one that "interferes seriously" with a claimant's ability to independently initiate, sustain or complete activities, while an extreme limitation is one that "interferes very seriously" with a claimant's ability to initiate, sustain, or complete activities. 20 C.F.R. §§ 416.926a(e)(2)-(3). However, a rating of extreme is reserved for only the "worst limitations," although this "does not necessarily mean a total lack or loss of ability to function." Id. § 416.926a(e)(3).

7

§ 416.994a(b)(2). At the third step, the ALJ must determine whether the claimant is currently disabled and, in doing so, must consider three sub-steps. Id. § 416.994a(b)(3). At the first sub-step, the ALJ must determine whether the claimant currently has a medically determinable impairment that is "severe" or a combination of impairments that is "severe;" if so, the analysis proceeds to the second sub-step. Id. § 416.994a(b)(1)(i). At the second sub-step, the ALJ must determine whether the claimant's severe impairment or combination of impairments meets or medically equals the severity of any impairment in the Listings; if it does not, then the analysis proceeds to the third sub-step. Id. § 416.994a(b)(1)(ii). Finally, at the third sub-step, the ALJ must determine whether the claimant's current impairment functionally equals the severity of any impairment in the Listings; if it does, then the claimant's disability continues. Id. § 416.994a(b)(1)(iii). If it does not, then the claimant's disability has ended. Id.

As noted above, Plaintiff's challenge here concerns the ALJ's finding that the medication prescribed to Claimant resulted in medical improvement as of August 24, 2010. Following his finding that Plaintiff was under a disability from June 27, 2005, through August 23, 2010, the ALJ noted that medication was prescribed to Claimant in order to treat her ADHD, that Claimant responded well to the medication with no side effects, and that, while on the medication, she "was able to focus and stay on tasks, did not engage in tantrums, had no difficulty sleeping at night and napping during the day, and was doing well in school." R. 22. Accordingly, the ALJ applied the three-step process for determining whether a disability has ceased in a child and found that, as of August 24, 2010, medical improvement had occurred such that Claimant was no longer under a disability.

As noted by Plaintiff (Pl.'s Br., p.16), the ALJ cited to Exhibits 1F, 4F, and 6F in making his finding concerning medical improvement, R. 23. Exhibit 1F contains the medical

8

records of Vaidyanathan Kannan, M.D., a physician at Community Mental Health Center, concerning his treatment of Claimant from her birth in June of 2005 through December 2009, and contains a reference to Claimant's ADHD in an evaluation form dated December 18, 2009. R. 299-311. Exhibit 4F contains further medical records from Community Mental Health Center, including evaluations of Claimant prepared by Angelita Lucero, M.D., James A. Kibler, M.D., and Antonio Luis, M.D., between January 4, 2010, and July 26, 2010. R. 335-49. Those evaluations make clear that, during that time period, Claimant was "incredibly hyperactive" and generally uncontrollable, and that the aforementioned physicians were making continual modifications to her medication type and dosage in an effort to effectively treat her ADHD. Id. Exhibit 6F contains Dr. Luis's evaluations of Claimant from August 23, 2010, through June 6, 2011. R. 357-62. In his August 23, 2010 evaluation, Dr. Luis noted that Claimant was much calmer than on her previous visit, was not hyperactive, and was focused without being impulsive. R. 362. Additionally, Dr. Luis changed Claimant's medication to a particular regimen of Ritalin. Id. Dr. Luis's subsequent evaluations clearly and consistently indicate that, so long as Claimant takes her medication as prescribed, she is focused, not hyperactive, concentrates well, and is generally unproblematic. R. 356-61.

Following his citation to those exhibits, the ALJ found that, pursuant to the first and second steps of the sequential process for determining whether a disability has ceased in a child, medical improvement had occurred, and that, additionally, Claimant still did not have an impairment that met or medically equaled the severity of an impairment in the Listings. R. 22. Pursuant to the first sub-step of step three, the ALJ found that Claimant continued to have the same severe impairment, ADHD, as she did from June 27, 2005, through August 23, 2010. Id. Next, pursuant to the second sub-step of step three, the ALJ found that Claimant

9

did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment in the Listings. R. 22. The ALJ then examined Claimant's medically determinable impairments in light of the six domains used for determining functional equivalence to a Listing and found that, pursuant to the third sub-step of step three, she did not demonstrate functional equivalence. R. 22-27. Specifically, the ALJ thoroughly considered the six domains and found that Claimant exhibited "less than marked" limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, caring for herself, and health and physical well-being, and no limitations in moving about and manipulating objects. Id. Given the ALJ's clear citation to and reliance on the aforementioned medical evaluations from both before and after Claimant's medical improvement – as well as his analysis of Claimant's impairments pursuant to the six domains for demonstrating functional equivalence to a Listing – the Court finds that the ALJ's finding of medical improvement was supported by substantial evidence. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). That being the case, Plaintiff's argument that the ALJ did not cite to medical evidence to show medical improvement is both puzzling and simply incorrect.[5] (Pl.'s Br., p. 18.)

As to Plaintiff's apparent argument that the ALJ failed to give proper consideration to teacher questionnaires and IEP forms prepared by Claimant's school, that argument is likewise unavailing. (Pl.'s Br., p. 17.) First, while it is true that a decision is not supported

---

[5] Additionally, although Plaintiff does not present an explicit argument concerning the issue, the Court is aware of her extensive citations to case law establishing that an ALJ cannot simply rely on "current evidence" to determine whether a claimant's disability has ceased, but must instead engage in a comparison of the older evidence establishing a claimant's disability to the current evidence. (See doc. no. 16, pp. 13-15.) Here, the Court finds that the ALJ's thorough examination of the medical records from before and after Claimant's medical improvement effectively satisfies that requirement.

by substantial evidence where the ALJ focuses on one aspect of the evidence and disregards other contrary evidence, McCruter, 791 F.2d at 1548, such is not the case here. In finding that Claimant was not disabled as of August 24, 2010, the ALJ noted that statements in the record concerning the intensity, persistence, and limiting effects of Claimant's symptoms are not credible following that date to the extent that such statements are inconsistent with the medical records. R. 22. Thus, the ALJ did not "disregard" contrary evidence, but instead considered the statements in the record concerning Claimant's symptoms in arriving at his decision. Moreover, as correctly noted by the Commissioner (Comm'r's Br., p. 8), the issue for consideration here is not whether *all* of evidence in the record supports the ALJ's decision, but rather whether *substantial* evidence supports that decision. See Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007). Thus, the fact that information contained in teacher questionnaires and IEP forms might be somewhat at odds with the medical records in this case does not mean that the ALJ's decision was not supported by substantial evidence.

Moreover, Plaintiff does not cite to – nor is the Court aware of – any authority supporting the proposition that teacher questionnaires or other school documents are entitled to any particular weight in the ALJ's decision-making process. The foregoing is especially true where, as here, the documents to which Plaintiff refers tend to largely corroborate the ALJ's findings that Claimant's condition is considerably improved so long as she is compliant in taking her medication. R. 261, 269, 374. Notably, a treatable impairment is not considered disabling. Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988). Additionally, Plaintiff's argument that Claimant's continued enrollment in the IEP program is indicative of an unchanged condition is unconvincing, given that Plaintiff has presented no reason to believe that the simple fact of Claimant's enrollment in the program is

necessarily at odds with a finding that her condition has improved. (Pl.'s Br., p. 17.) Finally, as to Plaintiff's argument that, even if the ALJ's finding *was* supported by substantial evidence, the school documents support "at most . . . a one level reduction in the two domains where there were extreme limitations" (Pl.'s Br., pp. 17-18), the Court, having found that the ALJ's decision was indeed supported by substantial evidence, declines Plaintiff's apparent improper invitation to re-weigh the evidence here. See Cornelius, 936 F.2d at 1145.

In sum, the Court finds that the ALJ's finding of medical improvement in Claimant's condition as of August 24, 2010, such that she was not subject to a disability as of that date, was supported by substantial evidence. McDaniel, 800 F.2d at 1031.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 7th day of May, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE